**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 1:06-cv-1872 OWW JLT |
| | ) | |
| Plaintiff, | ) | FINAL PRETRIAL ORDER |
| | ) | |
| v. | ) | Settlement Conference Date: |
| | ) | 2/17/10 9:30 Bakersfield |
| JIM F. MALONE, D.P.M., and JIM | ) | |
| MALONE D.P.M., INC., | ) | Motion in Limine Date: |
| | ) | 02/26/10 12:00 noon, Ctrm. |
| Defendants. | ) | 3 |
| | ) | |
| _____ | ) | Trial Date: 03/09/10 9:00 |
| | ) | Ctrm. 3 (JT-8 days) |

## I.   JURISDICTION AND VENUE

1.    The United States seeks to recover damages and civil penalties from Defendants Malone and JM Corp. (collectively "Defendants") based on allegations that Defendants made false claims and false statements to the Medicare program to obtain payment for alleged podiatry services.  This Court has jurisdiction in this action under 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345.  Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b).

## II.   JURY/NON-JURY

1.    Jury trial has been demanded by Defendants and the

Court reserves eight (8) days for trial.

III.   FACTS

A.   Undisputed Facts

Identity of the Defendants

1.   At all times material to this civil action, Defendant Malone, a podiatrist, was a participant in the Medicare program within the State of California and this district both directly and through Defendant JM Corp.  (Scheduling Order, Admitted Fact No. 1).

2.   Defendant JM Corp. is a professional corporation organized under the laws of the State of California.  At all times material to this civil action, Defendant Malone was a shareholder in JM Corp. and operated and managed Defendant JM Corp.  (Scheduling Order, Admitted Fact No. 2).

3.   Defendant Malone and JM Corp. are each "persons" within the meaning of the False Claims Act, 31 U.S.C. § 3729.  (1 USC § 1).

The United States and the Medicare Program Entities

4.   The Medicare Program is a federal health insurance system that provides benefits for eligible aged and disabled persons.  Medicare Part B is a voluntary subscription program of supplementary medical insurance covering items and services other than hospitalization expenses, such as charges for certain physician services.  (Scheduling Order, Admitted Fact No. 3).

5.   The United States provides reimbursement for Medicare Part B claims through the Centers for Medicare & Medicaid Services ("CMS") (formerly the Health Care Financing Administration ("HCFA")).  CMS contracts with private insurance

carriers to administer, process, and pay Medicare Part B claims from the Federal Supplementary Medical Insurance Trust Fund, which is funded by the United States Treasury. In this capacity, the insurance carriers act on behalf of the federal government. (Scheduling Order, Admitted Fact No. 4).

6. The insurance carrier that administered, processed and paid the Medicare claims at issue in this case was National Heritage Insurance Company ("NHIC"). (Scheduling Order, Admitted Fact No. 9 [modified]).

The Medicare Reimbursement Process.

7. Providers billing the Medicare program must code the medical services and procedures in accordance with the Physician's Current Procedural Terminology guide ("CPT guide"), or in certain cases by using HCFA Common Procedure Coding System codes ("HDPCS codes"). The CPT guide provides a listing of descriptive terms and corresponding identifying codes ("CPT codes") for reporting medical services and procedures performed by providers. Providers are required to use CPT codes or HDPCS codes to describe the medical services and procedures for which they bill Medicare. (Scheduling Order, Admitted Fact No. 5).

8. Healthcare providers, including podiatrists, must comply with applicable statutes, regulations, and Medicare policy and guidelines in order to be reimbursed by Medicare. (Scheduling Order, Admitted Fact No. 6).

9. At all times material to this civil action, providers billing the Medicare program were required to submit either a hard-copy claim form called a CMS 1500 (formerly HCFA 1500), or its electronic equivalent. On the CMS 1500 claim form, the

provider certifies, among other things, that "the services shown on [the] form were medically indicated and necessary for the health of the patient." The form also notifies providers that "[a]ny person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be . . . subject to civil penalties." (Scheduling Order, Admitted Fact No. 7).

10. As a condition of submitting electronic Medicare claims, defendants Malone and JM Corp. agreed that any electronic claims they submitted would be accurate, complete, and truthful, and acknowledged that the submission of an electronic claim is a claim for payment under the Medicare program. (Scheduling Order, Admitted Fact No. 8).

11. Defendants Malone and JM Corp. submitted each of the Medicare claims at issue in this case by submitting hard copy CMS 1500 claims, or equivalent electronic claims, to NHIC for payment from the Medicare program. (Scheduling Order, Admitted Fact No. 9 [modified]).

**Defendants' 99301 Claims**.

12. Between 1995 and 2000, Defendants provided podiatric care to patients at numerous skilled nursing facilities throughout the San Joaquin Valley. (Malone Depo, 63:14-20).

13. In those instances during the period of 1995 through 2000 in which Defendants provided podiatric care at a skilled nursing facility to a patient who received Medicare benefits and for whom Defendants had not previously provided podiatric care (i.e., a new Medicare patient), it was Defendants' custom and practice to submit a claim to NHIC for the initial patient visit

4

1 seeking reimbursement for the service described under CPT Code

2 99301.  (Malone Depo, 177:1-178:9, 182:20-184:25).

3     14.  Defendant Malone's 99301 claims may be summarized as

4 follows:

5         a.   Between November 21, 1996 and April 23, 2004,

6 Defendant Malone submitted 5,768 separate claims to HNIC that

7 sought Medicare reimbursement for CPT Code 99301 services.  The

8 claim number, date of service, claim submission date and, where

9 applicable, the date and amount of payment for each of the 5,768

10 separate claims is set forth at pages 1 through 109 of

11 Plaintiff's Exhibit 1 to the Complaint.  (February 29, 2008 Order

12 Re: Plaintiff's Requests for Admissions).

13         b.   The following 7 claims are representative of the

14 nature and scope of care provided by Defendant Malone in each of

15 the 5,768 separate claims at issue, and as such, the parties

16 agree that the Court's findings with regard to the following

17 claims can and should be applied to the universe of Defendant

18 Malone's 99301 claims as a whole: (i) Dellwood R. (Ref. # 2891);

19 (ii) Teddi B. (Ref. # 4668); (iii) James W. (Ref. # 529); (iv)

20 Guy T. (Ref. # 5266); (v) Gertrude W. (Ref. # 5160); (vi) Grace

21 H. (Ref. # 5209); (vii) Dorothy M. (Ref. # 5498)."

22         c.   Although some of the 5,768 separate claims at

23 issue were submitted by Defendant Malone to NHIC after December

24 31, 2000, the service date for all 5,768 claims at issue pre-

25 dates December 31, 2000.

26         d.   The claims identified on pages 1 through 109 of

27 Plaintiff's Exhibit 1 to the Complaint as Claim Nos. 1 through

28 2805 were all submitted by Defendant Malone prior to January 6,

1  1999.  Claim Nos. 2806 through 5768 were submitted by Defendant
2  Malone on or after January 6, 1999.

3      15.  Defendant JM Corp.'s 99301 claims may be summarized as
4  follows:

5          a.  Between October 15, 1997 and February 22, 2002,
6  Defendant JM Corp. submitted 842 separate claims to HNIC that
7  sought Medicare reimbursement for CPT Code 99301 services.  The
8  claim number, date of service, claim submission date and, where
9  applicable, the date and amount of payment for each of the 842
10 separate claims is set forth at pages 110 through 125 of
11 Plaintiff's Exhibit 1 to the Complaint.  (February 29, 2008 order
12 Re: Plaintiff's Requests for Admissions).

13         b.  The following 7 claims are representative of the
14 nature and scope of care provided by Defendant JM Corp. in each
15 of the 842 separate claims at issue and, as such, the parties
16 agree that the Court's findings with regard to the following
17 claims can and should be applied to the universe of Defendant JM
18 Corp.'s 99301 claims as a whole: (i) Dellwood R. (Ref. # 2891);
19 (ii) Teddi B. (Ref. # 4668); (iii) James W. (Ref. # 5029); (iv)
20 Guy T. (Ref # 5266); (iii) James W. (Ref. # 5029); (iv) Guy T.
21 (Ref. # 5266); (v) Gertrude W. (Ref. # 5160); (vi) Grace H. (Ref.
22 # 5209); (vii) Dorothy M. (Ref. # 5498)."

23         c.  Although some of the 842 separate claims at issue
24 were submitted by Defendant JM Corp. to NHIC after December 31,
25 2000, the service date for all 842 claims at issue pre-dates
26 December 31, 2000.

27         d.  The claims identified on pages 110 through 125 of
28 Plaintiff's Exhibit 1 to the Complaint as Claim Nos. 1 through

835 were all submitted by Defendant JM Corp. prior to January 6, 1999.  Claim Nos. 836 through 842 were submitted by Defendant JM Corp. on or after January 6, 1999.

### Claims with Service Date After Date of Death

16.  Between January 3, 1997, and February 5, 1999, Defendants submitted 46 separate claims to NHIC that sought Medicare reimbursement for podiatric services that Defendants represented were provided on a date that was subsequent to the actual date of death for each corresponding patient.  The claim number, alleged service date, date of death and claim date for each claim at issue is set forth in Plaintiff's Exhibit 2 to the Complaint.  (February 29, 2008 Order Re: Plaintiff's Request for Admissions).

17.  All but two of the 46 claims noted on Plaintiff's Exhibit 2 to the Complaint were submitted to NHIC by Defendants prior to January 6, 1999.  Claim Nos. 45 and 46 were submitted to NHIC after January 6, 1999.

### Claims for Bi-Lateral Services to Amputees

18.  Between December 17, 1996, and December 29, 1998, Defendants submitted 12 separate claims to NHIC that sought Medicare reimbursement for services that Defendants represented were bilateral debridement services (i.e., treatment of 6 or more toes) for patients who had, prior to the date of service, undergone an amputation of one leg.  The claim number, amputation date, alleged service date, claim date and claim paid date for each claim at issue is set forth in Plaintiff's Exhibit 3 to the Complaint.  (February 29, 2008 Order Re: Plaintiff's Request for Admissions).

1    19.   All but one of the 12 claims noted on Plaintiff's
2  Exhibit 3 to the Complaint were submitted to NHIC by Defendants
3  prior to January 6, 1999.   Claim No. 12 was submitted to NHIC
4  after January 6, 1999.

5          **Claims for Service Date December 18, 1996**.

6    20.   In 1997, Defendant Malone submitted claims to NHIC that
7  sought Medicare reimbursement for 171 separate podiatric services
8  that Defendant Malone represented were all performed on December
9  18, 1996.   The claim number, claim date, claim paid date and
10 billing code for each of the 171 separate claims at issue is set
11 forth in Plaintiff's Exhibit 4 to the Complaint.   (February 29,
12 2008 order Re: Plaintiff's Request for Admissions).

13         **Miscellaneous**.

14   21.   The United States and Defendants entered into a tolling
15 agreement in January 2005.   Under the agreement, Defendants
16 waived "any statute of limitations, laches, or other similar
17 defenses (whether statutory, contractual, or otherwise) except
18 those defenses, if any, in existence on January 6, 2005."

19   22.   The United States filed the complaint on December 22,
20 2006.

21 B.   **Disputed Facts**

22   1.   Whether Defendants submitted inflated bills to the
23 Medicare program and falsely billed the Medicare program for
24 services that were never performed and/or for which Defendants
25 were not entitled to payment from the Medicare program.

26   2.   Whether Defendants submitted Medicare claims to NHIC
27 for comprehensive nursing facility assessments under CPT code
28 99301, when Defendants had not provided such services as defined

**8**

1 by the CPT guide and Medicare policy.

2      3.    Whether Defendants submission of Medicare claims to
3 NHIC for alleged podiatric services on patients who had died
4 before the claimed date of service was due to administrative
5 errors that occurred despite Defendants' diligence in attempting
6 to avoid such errors.

7      4.    Whether Defendants' submission of medicare claims to
8 NHIC for alleged bilateral podiatric services (i.e., for both
9 feet) on patients who had one foot amputated prior to the claimed
10 date of service was due to administrative errors that occurred
11 despite Defendants' diligence in attempting to avoid such errors.

12      5.    Whether Defendants submitted Medicare claims to NHIC
13 for excessive services in a single day, beyond the number that
14 could be provided within the standard of care.

15      6.    Whether Defendant is entitled to an offset.

16                IV.   DISPUTED EVIDENTIARY ISSUES

17      1.    None.

18                 V.   SPECIAL FACTUAL INFORMATION

19      1.    This case does not fall within the list of actions
20 identified in Local Rule 281(b)(6).

21                     VI.   RELIEF SOUGHT

22      1.    The United States seeks the following relief:

23           a.    On Plaintiff's First and Second Causes of Action
24 under the False Claims Act arising out of Defendant Malone's
25 submission of 99301 claims, Plaintiff seeks $233,069.29 in
26 damages (trebled per 31 U.S.C. § 3729) plus civil interest and
27 penalties.

28           b.    On Plaintiff's First and Second Causes of Action

under the False Claims Act arising out of Defendant JM Corp.'s submission of 99301 claims, Plaintiff seeks $24,135.68 in damages (trebled per 31 U.S.C. § 3729) plus civil interest and penalties.

c.    On Plaintiff's First and Second Causes of Action under the False Claims Act arising out of Defendants' submission of claims for services after the date of death of the patients at issue, Plaintiff seeks civil penalties pursuant to 31 U.S.C. § 3729.

d.    On Plaintiff's First and Second Causes of Action under the False Claims Act arising out of Defendants' submission of claims for bilateral podiatric services for patients who had one foot amputated prior to the alleged date of service, Plaintiff seeks civil penalties pursuant to 31 U.S.C. § 3729.

e.    On Plaintiff's Third Cause of Action for common law fraud, Fourth Cause of Action for payment by mistake of fact, and Fifth Cause of Action for unjust enrichment, all arising out of Defendant's submission of the Medicare claims identified above, Plaintiff seeks $257,204.97 in damages plus interest and costs.

## VII.  DISPUTED ISSUES OF LAW

A.    <u>Plaintiffs Legal Theory</u>

1.    The False Claims Act imposes liability on any person who "knowingly presents . . . to . . . the United States Government . . . a false or fraudulent claim for payment."  31 U.S.C. § 3729(a)(1).  A request for reimbursement from Medicare is a "claim" within the meaning of the False Claims Act. <u>Peterson v. Weinberger</u>, 508 F.2d 45 (5th Cir. 1975).  A claim is "knowingly" false or fraudulent where the defendant either

actually knows the falsity of the information underlying his claim, deliberately ignores the truth or falsity of the underlying information, or acts in reckless disregard of the truth or falsity of the underlying information, and "no specific intent to defraud is required."  31 U.S.C. § 3729(b).

2.   In addition to Plaintiff's False Claims Act allegations, Plaintiff has asserted common law claims for fraud, mistake of fact, and unjust enrichment.  <u>United States v. G & H Machinery</u>, 92 F.R.D. 465, 467 (S.D. Ill. 1981) (alternative theories, including common law claims, may be presented by the Government for resolution by the trier of fact).

3.   As an alternative to remedies under the False Claims Act, Plaintiff is entitled to damages on proof that (i) Defendants made material misrepresentations in the Medicare submissions; (ii) Defendants knew of the falsity of the representations or recklessly disregarded the truth; (iii) the Government relied on the representations; and (iv) the Government has suffered damages.  <u>United States v. Cripps</u>, 460 F.Supp. 969, 975 (E.D. Mich. 1978).

4.   As an alternative to remedies under the False Claims Act, Plaintiff is entitled to restitution on proof that Defendants received reimbursement on the Medicare claims by mistake and without right.  <u>United States v. Mead</u>, 426 F.2d 118, 124 (9th Cir. 1970).  Proof of fraud is not necessary.  <u>Id.</u> at 124-125.

5.   Finally, as an alternative to remedies under the False Claims Act, Plaintiff is entitled to restitution on proof that Defendants were enriched at Plaintiff's expense, and "the

circumstances were such that in equity and good conscience the defendant should return the money to the plaintiff." <u>Blusal Meats, Inc. v. United States</u>, 638 F.Supp. 824, 831 (S.D.N.Y. 1986), <u>aff'd</u>, 817 F.2d 1007 (2d Cir. 1987) (citing <u>Reprosystem, B.V. v. SCM Corp.</u>, 727 F.2d 257, 263 (2d Cir.), <u>cert. denied</u>, 469 U.S. 828 (1984). "Proof of wrongful conduct by the defendant is not required." <u>Ibid.</u>

    <u>Defendants' Legal Theory</u>.

    1.    Defendants deny liability and assert that any allegations of liability arising out of the Medicare claims submitted by Defendants to NHIC prior to January 6, 1999, are barred by the three-year or six-year limitations periods prescribed by 31 U.S.C. § 3731, the six-year limitations period prescribed by 28 U.S.C. § 2415, and the doctrine of equitable estoppel.

VIII.  ABANDONED ISSUES

    1.    None.

IX.  WITNESSES

A.   <u>Plaintiffs</u>

    1.    Jim F. Malone, D.P.M.

    2.    Rebecca Lewis

    3.    Robert Hampton

    4.    Maria Sharp

    5.    Allen Pajarin

    6.    Mihaela Cintean

    7.    Dustin Paisley

    8.    Gaye Eaton

    9.    Dorothy Russell

10. Jim Nycum

11. Lorrali Herrera

12. Michele Kelly

13. Randall Sarte, D.P.M.

14. Neil C. Schwertman, Ph.D.

B. **Defendants**

1. Jim F. Malone, D.P.M.

2. Rebecca Lewis

3. Robert Hampton

Counsel are each ordered to submit a list of witnesses to the court along with a copy for use by the Courtroom Deputy Clerk, on the same date and at the same time as the list of exhibits are to be submitted as ordered below.

**CAUTION**

Counsel are cautioned that expert witnesses, including percipient experts, must be designated as such. No witness, not identified as a witness in this order, including "rebuttal" witnesses, will be sworn or permitted to testify at trial.

## X. EXHIBITS, SCHEDULES AND SUMMARIES

The following is a list of documents or other exhibits that the parties expect to offer at trial.

**CAUTION**

Only exhibits so listed will be permitted to be offered into evidence at trial, except as may be otherwise provided in this order. No exhibit not designated in this pretrial order shall be marked for identification or admitted into evidence at trial.

1. Complaint and Exhibits 1 through 4 thereto.

2. Answer.

1    3.    Plaintiff's Written Discovery and Defendants' Responses
2  thereto.

3    4.    Defendants' Written Discovery and Plaintiff's Responses
4  thereto.

5    5.    02/29/08 Order Re: Discovery.

6    6.    Documents produced by Defendant in Response to Written
7  Discovery, including Hospital Work Sheets.

8    7.    Transcript of Malone Deposition and Exhibits A through
9  Q thereto.

10   8.    Transcript of Hampton Deposition and Exhibits R through
11 S thereto.

12   9.    Transcript of Lewis Deposition.

13   10.   CV and reports of Dr. Sarte.

14   11.   CV and reports of Dr. Schwertman.

15   12.   Documentation regarding claims by Dr. Malone for
16 services to beneficiaries after date of death, produced February
17 16, 2006.  US000001-117.

18   13.   Documentation regarding claims by Dr. Malone for
19 alleged debridement and other services for previously-amputated
20 beneficiaries, produced February 16, 2006.  US000118-285.

21   14.   Documentation regarding additional claims by Dr. Malone
22 for alleged debridement and other services for previously-
23 amputated beneficiaries, produced February 16, 2006. US000286-
24 312.

25   15.   Documentation regarding additional claims by Dr. Malone
26 for alleged services to beneficiaries after date of death,
27 produced February 16, 2006.  US000313-454.

28   16.   Documentation regarding additional claims by Dr. Malone

for alleged services to beneficiaries after date of death, produced February 24, 2006.  US000455-467.

17.  Medicare EMC faxes for 99301 billings.  US000468-6965.

18.  CPT Guides, Podiatry Billing Guides, Medicare Bulletins and Newsletters.  US006966-7126, US010308-10384.

19.  February 27, 1997 Audit.  US007127-7166.

20.  NHIC audit.  US007167-7176.

21.  NHIC Audit Medical Records and Back-Up Documents. US007177-10028.

22.  Medicare Applications, Agreements, License and Corporate Documents, and Payment Records.  US010029-10307.

23.  HHS audit.  US010385-10423.

24.  HHS Audit Medical Records and Back-Up Documents. US010424-12559.

25.  Back-up data for Complaint Exhibits 1 through 4. US01250-12713.

26.  Full copies of CPTs for 1995-2000.

27.  Exemplars of CMS 1500.

28.  Exemplar CPT 99301 Comprehensive Evaluation checklist.

29.  Patient photographs.

30.  Claims summary charts.

31.  Defendants' additional documentation concerning agreed-upon sample claims.

32.  Defendant Bankruptcy Records (offered by Plaintiff).

33.  Documents relating to other Medicare audit/review and determinations of patient services billed under CPT 99301 not pursuant to this law suit (offered by Defendants).

XI.  DISCOVERY DOCUMENTS

1   Only specifically designated discovery requests and
2   responses will be admitted into evidence.  Any deposition
3   testimony shall be designated by page and line and such
4   designations filed with the Court on or before February 19, 2010.
5   The opposing party shall counter-designate by line and page from
6   the same deposition and shall file written objections to any
7   question and answer designated by the opposing party and filed
8   with the court on or before February 26, 2010.

9   Written discovery shall be identified by number of the
10  request.  The proponent shall lodge the original discovery
11  request and verified response with the courtroom deputy one day
12  prior to trial.  The discovery request and response may either be
13  read into evidence, or typed separately, marked as an exhibit, as
14  part of the exhibit marking process, and offered into evidence.

15  1.   The parties seek to introduce the deposition testimony
16  of Rebecca "Becky" Lewis in lieu of her live testimony on the
17  ground that she resides out-of-state and is unavailable for
18  trial.

19  2.   The parties further reserve the right to refer at trial
20  to the deposition transcripts of Jim F. Malone and Robert Hampton
21  for impeachment or other allowable purposes.

22              XII.   STIPULATIONS

23  1.   The parties stipulate to the authenticity and
24  admissibility of the medical records produced in Plaintiff's
25  initial disclosures and in Defendants' Responses to Requests for
26  Production.

27          XIII.   AMENDMENTS - DISMISSALS

28  1.   None.

16

## XIV.  FURTHER TRIAL PREPARATION

A.    <u>Trial Briefs.</u>

Counsel are directed to file a trial brief in this matter by March 3, 2010.  No extended preliminary statement of facts is required.  The brief should address disputed issues of substantive law, disputed evidentiary issues of law that will not be resolved <u>in</u> <u>limine</u>, and any other areas of dispute that will require resolution by reference to legal authority.

B.    <u>Duty of Counsel To Pre-Mark Exhibits</u>.

1.    Counsel for the parties are ordered to meet and conduct a joint exhibit conference on February 5, 2010, at 10:00 a.m. via telephone conference for purposes of pre-marking and examining each other's exhibits and preparing an exhibit list.  All joint exhibits will be pre-marked JX1-JX50; all of the plaintiff's exhibits will be pre-marked with numbers 51-150; all of defendant's exhibits will be pre-marked with numbers 151-250.

2.    Each and every page of each and every exhibit shall be individually Bates-stamped for identification purposes, and paginated with decimals and arabic numerals in seriatim; i.e., 1.1, 1.2, 1.3 . . ..

3.    Following such conference, each counsel shall have possession of four (4) complete, legible sets of exhibits, for use as follows:

a.    Two (2) sets to be delivered to the Courtroom Deputy Clerk, Renee Gaumnitz, no later than 4:00 p.m. on March 5, 2010, an original for the court and one for the witness.

b.    One (1) set to be delivered to counsel for the opposing party and one (1) set to be available for counsel's own

use.

4.   Counsel are to confer to make the following determination as to each of the exhibits proposed to be introduced into evidence and prepare separate indexes, one listing joint exhibits, one listing each party's exhibits:

a.   Joint exhibits, i.e., any document which both sides desire to introduce into evidence, will be marked as a joint exhibit (JX), and numbered JX1-___.  Joint exhibits shall be listed as such in the exhibit list in a column that notes they are admitted into evidence without further foundation;

b.   As to any exhibit, not a joint exhibit, to which there is no objection to its introduction into evidence, the exhibit will be marked as Plaintiff's Exhibit ___, or Defendant's Exhibit ___ in evidence, and will be listed in the exhibit list as the exhibit of the offering party;

c.   The exhibit list shall include columns for noting objections to exhibits.  The first column will list any objections as to foundation; i.e., Plaintiff's Foundation 2 – "not authenticated."

d.   The exhibit list shall include a second column for noting substantive objections to exhibits based on any other grounds; i.e., "hearsay, improper opinion, irrelevant."

e.   The exhibit list shall include a description of each exhibit on the left-hand side of the page, and the three columns outlined above (as shown in the example below).

### List of Exhibits

| Exhibit # | Description | Admitted In Evidence | Objection To Foundation | Other Objection |
|---|---|---|---|---|

18

1          **f.**    The completed exhibit list shall be delivered to

2  Renee Gaumnitz CRD on or before March 5, 2010, at 4:00 p.m.

3          **g.**    If originals of exhibits cannot be located, copies

4  may be used, however, the copies <u>must be legible and accurate</u>.

5  If any document is offered into evidence that is partially not

6  legible, the Court <u>sua</u> <u>sponte</u> will exclude it from evidence.

7  **C.**   <u>Discovery Documents</u>.

8          **1.**    Counsel shall file a list of discovery documents with

9  Renee Gaumnitz CRD at the same time and date as the witness and

10  exhibit lists are lodged with her, unless the discovery documents

11  are marked as exhibits, which counsel intend to use at trial by

12  designating by number, the specific interrogatory, request for

13  admission, or other discovery document.  Counsel shall comply

14  with the directions of subsection XII (above) for introduction of

15  the discovery document into evidence.

16  ///

17  **D.**   <u>Motions In Limine</u>.

18          **1.**    The motions in limine shall be filed by February 12,

19  2010, and any responses shall be filed by February 23, 2010.  The

20  Court will conduct a hearing on motions in limine in this matter

21  on February 26, 2010, at 12:00 p.m. in Courtroom 3, Seventh

22  Floor, before the Honorable Oliver W. Wanger United States

23  District Judge, at which time all evidentiary objections, to the

24  extent possible, will be ruled upon, and all other matters

25  pertaining to the conduct of the trial will be settled.

26  **E.**   <u>Trial Documents</u>.

27          **1.**    <u>Exhibits To Be Used With Witness</u>.  During the trial of

28  the case, it will be the obligation of counsel to provide

1  opposing counsel not less than forty-eight hours before the
2  witness is called to the witness stand, the name of the witness
3  who will be called to testify and to identify to the Court and
4  opposing counsel any exhibit which is to be introduced into
5  evidence through such witness that has not previously been
6  admitted by stipulation or court order or otherwise ruled upon,
7  and to identify all exhibits and other material that will be
8  referred to in questioning of each witness.  If evidentiary
9  problems are anticipated, the parties must notify the court at
10  least twenty-four hours before the evidence will be presented.
11  F.  <u>Counsel's Duty To Aid Court In Jury Voir Dire</u>.

12      1.    Counsel shall submit proposed voir dire questions, if
13  any, to Renee Gaumnitz CRD at <u>rgaumnitz@caed.uscourts.gov</u> on or
14  before March 5, 2010, at 4:00 p.m.  Counsel shall also prepare a
15  joint "statement of the case" which shall be a neutral statement,
16  describing the claims and defenses for prospective jurors, to be
17  used in voir dire.  The parties have endeavored to prepare a
18  detailed statement of undisputed facts herein, and the parties
19  may augment this statement prior to trial.

20      2.    In order to aid the court in the proper voir dire
21  examination of the prospective jurors, counsel are directed to
22  lodge with the Court the day before trial a list of the
23  prospective witnesses they expect to call if different from the
24  list of witnesses contained in the Pre-Trial Order of the Court.
25  Such list shall not only contain the names of the witnesses, but
26  their business or home address to the extent known.  This does
27  not excuse any failure to list all witnesses in the Pre-Trial
28  Order.

3.    Counsel shall jointly submit, to Renee Gaumnitz CRD the Friday before trial, a neutral statement of the claims and defenses of the parties for use by the court in voir dire.

G.    Counsel's Duty To Prepare And Submit Jury Instructions.

1.    All proposed jury instructions shall be filed and served on or before March 8, 2010, by 4:00 p.m.   Jury instructions shall be submitted in the following format.

2.    Proposed jury instructions, including verdict forms, shall be submitted via e-mail to dpell@caed.uscourts.gov formatted in WordPerfect for Windows X3.   Counsel shall be informed on all legal issues involved in the case.

3.    The parties are required to jointly submit one set of agreed upon jury instructions.   To accomplish this, the parties shall serve their proposed instructions upon the other fourteen days prior to trial.   The parties shall then meet, confer, and submit to the Court the Friday before the trial is to commence, one complete set of agreed-upon jury instructions.

4.    If the parties cannot agree upon any instruction, they shall submit a supplemental set of instructions designated as not agreed upon by March 8, 2010, at 4:00 p.m.

5.    Each party shall file with the jury instructions any objection to non-agreed upon instructions proposed by any other party.   All objections shall be in writing and shall set forth the proposed instruction objected to in its entirety.   The objection should specifically set forth the objectionable matter in the proposed instruction and shall include a citation to legal authority explaining the grounds for the objection and why the instruction is improper.   A concise statement of argument

concerning the instruction may be included.  Where applicable, the objecting party shall submit an alternative proposed instruction covering the subject or issue of law.

6.    Format.  The parties shall submit one copy of each instruction.  The copy shall indicate the party submitting the instruction, the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the test of the instruction, the legal authority supporting the instruction, and a legend in the lower lefthand corner of the instruction: "Given," "Given As Modified," "Withdrawn" and "Refused" showing the Court's action with regard to each instruction and an initial line for the judge's initial in the lower right-hand corner of the instruction.  Ninth Circuit Model Jury Instructions should be used where the subject of the instruction is covered by a model instruction.

7.    All instruction should be short, concise, understandable, and neutral statements of the law.  Argumentative or formula instructions will not be given, and should not be submitted.

8.    Parties shall, by italics or underlining, designate any modifications of instructions from statutory authority, or any pattern instruction such as the Model Circuit Jury Instructions or any other source of pattern instructions, and must specifically state the modification made to the original form instruction and the legal authority supporting the modification.

9.    Proposed verdict forms shall be jointly submitted or if the verdict forms are unagreed upon, each party shall submit a proposed verdict form.  Verdict forms shall be submitted to the

1  Courtroom Deputy Clerk on the first day of the trial.

2      10.   Failure to comply with these rules concerning the
3  preparation and submission of instructions and verdict forms may
4  subject the non-complying party and/or its attorneys to
5  sanctions.

6              XV.   USE OF LAPTOP COMPUTERS/POWERPOINT FOR
7                       PRESENTATION OF EVIDENCE

8      1.   If counsel intends to use a laptop computer for
9  presentation of evidence, they shall <u>contact Renee Gaumnitz CRD</u>
10 <u>at least one week prior to trial</u>.  The Courtroom Deputy Clerk
11 will arrange a time for any attorney to bring any laptop to be
12 presented to someone from the Court's Information Technology
13 Department, who will provide brief training on how the parties'
14 electronic equipment interacts with the court's audio/visual
15 equipment.  If counsel intend to use PowerPoint, the resolution
16 should be set no higher than 1024 x 768 when preparing the
17 presentation.

18     2.  ALL ISSUES CONCERNING AUDIO-VISUAL MATERIALS AND
19 COMPUTER INTERFACE WITH THE COURT'S INFORMATION TECHNOLOGY SHALL
20 BE REFERRED TO THE COURTROOM DEPUTY CLERK.

21             XVI.   FURTHER DISCOVERY OR MOTIONS
22     1.   None.

23                    XVII.   SETTLEMENT
24     1.   A settlement conference is set on February 17, 2010 at
25 9:30 a.m. in Bakersfield before Magistrate Judge Thurston.

26             XVIII.   SEPARATE TRIAL OF ISSUES
27     1.   Defendant seeks a bifurcated trial on the issue of the
28 defense of the statute of limitations.  Plaintiff objects to the

                              23

request.  This request is a dispositive motion out of time.

### XIX.  IMPARTIAL EXPERTS, LIMITATIONS OF EXPERTS

1.  Not applicable.

### XX.  ATTORNEYS' FEES

1.  Not applicable, none sought.

### XXI.  ESTIMATE OF TRIAL TIME

1.  Eight days.

### XXII.  TRIAL DATE

1.  March 9, 2010, at 9:00 a.m., in Courtroom 3, on the Seventh Floor.

### XXIII.  NUMBER OF JURORS AND PEREMPTORY CHALLENGES

1.  There will be an eight person jury, each side shall have four peremptory challenges.

### XXIV.  AMENDMENT OF FINAL PRETRIAL ORDER

1.  The Final Pretrial Order shall be reviewed by the parties and any corrections, additions, and deletions shall be drawn to the attention of the Court immediately.  Otherwise, the Final Pretrial Order may only be amended or modified to prevent manifest injustice pursuant to the provisions of Fed. R. Civ. P. 16(e).

### XXV.  MISCELLANEOUS

1.  Not applicable.


IT IS SO ORDERED.

Dated: __February 12, 2010__          _____/s/ Oliver W. Wanger_____
                                      UNITED STATES DISTRICT JUDGE

24