

1  BENJAMIN B. WAGNER
   United States Attorney
2  GLEN F. DORGAN (SBN 160502)
   Asst. United States Attorney
3  U.S. Courthouse, Suite 4401
   2500 Tulare St.
4  Fresno, CA 93721
   Telephone: (559) 497-4000
5  Facsimile: (559) 497-4099

6  Attorneys for the
   United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) Case No.: 1:06-cv-01872 OWW TAG |
|---|---|
| Plaintiff, | ) STIPULATION OF AGREED JUDGMENT |
| v. | ) |
| JIM F. MALONE, D.P.M., and JIM MALONE D.P.M., INC., | ) |
| Defendants. | ) |

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, as follows:

1. Effective March 3, 2010, the parties negotiated a Settlement Agreement ("the Agreement") in the above-captioned matter.

2. As part of the Agreement, and pursuant to Rules 41 and 54 of the Federal Rules of Civil Procedure, JIM F. MALONE, D.P.M. ("DEFENDANT MALONE") and JIM MALONE, D.P.M., INC. ("DEFENDANT JM CORP.") hereby consent to entry of judgment in this matter against them, jointly and severally, and in favor of the plaintiff, the United States of America, on the Fifth Cause of Action (Unjust Enrichment) of the Complaint, filed December 22, 2006. Judgment shall be in the total amount of $237,000, representing principal damages. A copy of the Agreement is attached as Exhibit "A" hereto and incorporated herein by this reference.

-1-
STIPULATION OF AGREED JUDGMENT

3. Judgment shall become final for all purposes upon entry of judgment, and Plaintiff and Defendants waive any right to appeal or seek review of this judgment by a higher court.

4. The parties hereto shall each bear their own costs, fees and expenses.

Respectfully submitted,

**ON BEHALF OF THE UNITED STATES**

Dated: March 4, 2010
United States Attorney
BENJAMIN B. WAGNER

\s\ Glen F. Dorgan
Glen F. Dorgan
Assistant United States Attorney
Eastern District of California

**ON BEHALF OF DEFENDANTS**

Dated: March 4, 2010
JIM F. MALONE, D.P.M.

\s\ Jim F. Malone
JIM F. MALONE, D.P.M.

Dated: March 4, 2010
JIM F. MALONE, D.P.M., INC.

\s\ Jim F. Malone
By:
Its:

Dated: March 4, 2010
LAW OFFICES OF GREER & ASSOCIATES, A.P.C.

\s\ Keith Greer
Keith Greer
Attorney for Defendants

It is so Ordered. Dated: 3-5-20

United States District Judge

# EXHIBIT A

## SETTLEMENT AGREEMENT

### I. PARTIES

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice (the "United States"); and Jim F. Malone, D.P.M. (MALONE) and Jim Malone, D.P.M., INC. (MALONE, INC.) (collectively "Defendants") (hereafter referred to as "the Parties"), through their authorized representatives.

### II. PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A. MALONE is a podiatrist operating in Bakersfield, CA. MALONE, INC. is Malone's podiatric medicine practice operating in Bakersfield, CA.

B. The United States contends that Defendants submitted or caused to be submitted claims for payment to the Medicare Program (Medicare), Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395hhh.

C. On December 22, 2006, the United States filed a complaint with the United States District Court for the Eastern District of California in the matter captioned United States of America v. Jim F. Malone, D.P.M., et al., Case No. 1:06-cv-1872-OWW-JLT ("the Action"). In the Action, the United States contends that it has certain civil claims against Defendants for engaging in the following conduct during the period from December 1, 1996, to December 31, 2004: submitting or causing the submission of false and fraudulent claims to Medicare as follows: (i) submission of claims for services that were never performed; (ii) submission of claims for comprehensive nursing facility assessments under CPT code 99301 when Medicare does not permit reimbursement under CPT code 99301 for services provided by a

podiatrist; (iii) submission of claims for comprehensive nursing facility assessments under CPT code 99301 when defendants failed to conduct and document the required detailed patient history, comprehensive physical examination of the patient, and/or a review and affirmation of the patient's plan of care; (iv) submission of claims for podiatric services purportedly provided to deceased patients; (v) submission of claims for bi-lateral podiatric services (i.e. for both feet) purportedly provided to patients who already had one foot amputated prior to the claimed date of service; (vi) submission of claims for excessive services in a single day, beyond the number that could be provided within the standard of care (hereinafter referred to as the "Covered Conduct").

D. The United States also contends that it has certain administrative claims against defendants for engaging in the Covered Conduct.

E. This Agreement is neither an admission of liability by defendants nor a concession by the United States that its claims are not well founded.

F. To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, the Parties reach a full and final settlement pursuant to the Terms and Conditions below.

### III. TERMS AND CONDITIONS

1. **Settlement Proceeds.** Defendants agree to pay to the United States the sum of TWO HUNDRED AND THIRTY-SEVEN THOUSAND AND NO/100 DOLLARS ($237,000.00) (the "Settlement Proceeds"). Subject to the medical tolling provisions of Paragraph 2, below, and the Medicare earnings provisions of Paragraph 3, below, the Settlement Proceeds shall be paid, without interest, in monthly installments as follows:

    A. Defendants shall pay $18,000.00, in 18 consecutive and equal monthly installments of $1,000.00 each, commencing with a payment of $1,000.00 on or before

May 1, 2010, and with subsequent payments of the same amount due and payable on or before the same day of each month thereafter, through October 1, 2011;

    B. Defendants shall pay $21,000.00, in 6 consecutive and equal monthly installments of $3,500.00 each, commencing with a payment of $3,500.00 on or before November 1, 2011, and with subsequent payments of the same amount due and payable on or before the same day of each month thereafter, through April 1, 2012;

    C. Defendants shall pay $198,000.00, in 44 consecutive and equal monthly installments of $4,500.00 each, commencing with a payment of $4,500.00 on or before May 1, 2012, and continuing each month thereafter through December 1, 2015.

    D. Defendants shall be placed in the Debtor Statement Program monitored by the Financial Litigation Unit of the United States Attorney's Office ("FLU-USAO") and shall receive monthly statements. Each payment shall be payable and deliverable as instructed on the monthly debtor statements. The statements will also contain information regarding the balance of the debt, as well as the status of the monthly payments.

    2. **Medical Tolling**. In the event MALONE suffers, for medical reasons, an interruption in earnings during the period of this Agreement, any future deadlines for the installment payments identified above in Paragraph 1 shall be tolled for a period not to exceed one (1) year, subject to the following terms and conditions:

    A. MALONE shall notify the United States (by writing mailed to the attention of Glen F. Dorgan, Assistant United States Attorney, United States Courthouse, Suite 4401, 2500 Tulare Street, Fresno, California, 93721) of his election to toll any future installment payment deadlines. Such written notice shall accompany a signed statement by MALONE's physician(s) certifying that MALONE's medical condition renders him unable to work. The

physician(s)' certification shall specify the date of the onset of MALONE's medical inability to work and the reasonably anticipated date of MALONE's medical ability to return to work ("the Period of Incapacity").

   B. Upon delivery of such written notice and the accompanying physician(s)' certification, all installment payments due and payable after the date of the notice shall be tolled as follows:

   1. If the Period of Incapacity is certified to be less than one month, the period of tolling shall be one month;

   2. If the Period of Incapacity is certified to be greater than one month and less than three months, the period of tolling shall be three months;

   3. If the Period of Incapacity is certified to be greater than three months and less than six months, the period of tolling shall be six months;

   4. If the Period of Incapacity is certified to be greater than six months and less than nine months, the period of tolling shall be nine months;

   5. If the Period of Incapacity is certified to be greater than nine months, the period of tolling shall be twelve months; and

   6. The aggregate number of months of tolling shall under no circumstances exceed twelve months.

   C. To the extent Defendants receive income from any source during a period of medical tolling, Defendants shall pay to the United States an amount no less than ten percent (10%) of any such gross income (the "Supplemental Income Payment"). Concurrent with the deadline for the next installment payment due immediately following a period of medical tolling, Defendants shall provide to the United States an accounting of all income earned during

the preceding period of medical tolling, and Defendants shall include with such accounting the Supplemental Income Payment. The accounting(s) and Supplemental Income Payment(s) shall be delivered by mail to the attention of Glen F. Dorgan, Assistant United States Attorney, United States Courthouse, Suite 4401, 2500 Tulare Street, Fresno, California, 93721. Any such Supplemental Income Payment shall be paid in addition to, not in lieu of, the next installment payment due immediately following the applicable period of medical tolling. However, any such Supplemental Income Payment shall be credited toward the payment of the Settlement Proceeds and shall reduce, by the amount of such Supplemental Income Payment, the amount(s) due at the conclusion of the installment payment plan.

3. **Annual Adjustment Payments Based on Medicare Earnings.**
Commencing on or before April 30, 2012, and continuing on the 30th of April for each year thereafter until the Settlement Proceeds are paid in full, Defendants shall provide to the United States an accounting (in the form of tax return(s) or similar accounting information) of all Medicare income earned during the preceding calendar year. If the sum of (i) the installment payments made pursuant to Paragraph 1 of this Agreement for the preceding calendar year, (ii) the Supplemental Income Payments, if any, made pursuant to Paragraph 2 of this Agreement for the preceding calendar year, and (iii) any advance settlement payments made by Defendants during the preceding calendar (collectively the "Prior Year Payments") is less than 10 percent (10%) of Defendants' gross Medicare earnings for the preceding calendar year (the "10 Percent Medicare Earnings"), Defendants shall pay to the United States an amount equal to the difference between the Prior Year Payments and the 10 Percent Medicare Earnings (the "Annual Adjustment Payment"). Defendants shall include payment of the Annual Adjustment Payment, if any, with each annual accounting. The accounting(s) and Annual Adjustment Payment(s) shall

be delivered by mail to the attention of Glen F. Dorgan, Assistant United States Attorney, United States Courthouse, Suite 4401, 2500 Tulare Street, Fresno, California, 93721. The Annual Adjustment Payment(s) shall be credited toward the payment of the Settlement Proceeds and shall reduce, by the amount of such Annual Adjustment Payment(s), the amount(s) due at the conclusion of the installment payment plan.

4. **Opportunity to Cure and Definition of Uncured Default.** In the event that any payment described herein is not timely received, the United States shall provide notice to counsel for Defendants via United States mail and facsimile, and Defendants shall have an opportunity to cure such default by delivery of payment made no later than 20 days after delivery of such notice. Any failure by Defendants to cure any default in the manner described herein shall constitute an "Uncured Default."

5. **Stipulated Judgment and Effect of Uncured Default.** Concurrent with the execution of this Agreement, Defendants shall execute a stipulation for entry of judgment in the Action in favor of the United States and against Defendants in the total sum of TWO HUNDRED AND THIRTY-SEVEN THOUSAND AND NO/100 DOLLARS ($237,000.00). The United States shall file the stipulation with the United States District Court for the Eastern District of California and shall obtain entry of a judgment in the Action against Defendants and in favor of the United States according to the terms of the stipulation. Absent an Uncured Default as defined in paragraph 4, above, (and except as otherwise provided in Paragraph 7, below), the United States shall take no steps to record the judgment, obtain a writ of execution of

///

///

///

Settlement Agreement Between
United States, Jim F. Malone, D.P.M.
and Jim Malone, D.P.M., Inc.                6

the judgment, or otherwise enforce the judgment. In the event of an Uncured Default as defined in paragraph 4, above, the following shall apply:

    A.  The United States may immediately commence enforcement of the judgment through recordation, writ of execution or otherwise, provided the United States first files in the Action a partial satisfaction of judgment in the amount of any settlement payments previously received.

    B.  Defendants acknowledge and agree that they shall be permanently excluded, pursuant to 42 U.S.C. § 1320a-7(b)(7), based upon the Covered Conduct, from Medicare, Medicaid, and all other Federal health care programs, as defined in 42 U.S.C. § 1320a-7b(f). Such exclusion shall have national effect and shall also apply to all other federal procurement and nonprocurement programs. Federal health care programs shall not pay anyone for items or services, including administrative and management services, furnished, ordered, or prescribed by Defendants in any capacity while Defendants are excluded. This payment prohibition applies to Defendants and all other individuals and entities (including, for example, anyone who employs or contracts with Defendants, and any hospital or other provider where Defendants provide services). The exclusion applies regardless of who submits the claim or other request for payment. Defendants shall not submit or cause to be submitted to any Federal health care program any claim or request for payment for items or services, including administrative and management services, furnished, ordered, or prescribed by Defendants during the exclusion. Violation of the conditions of the exclusion may result in criminal prosecution and the imposition of civil monetary penalties and assessments. Defendants further agree to hold the Federal health care programs, and all federal beneficiaries and/or sponsors, harmless from any financial responsibility for items or services furnished, ordered, or prescribed to such

beneficiaries or sponsors after the effective date of the exclusion. Defendants waive any further notice of the exclusion under and agree not to contest such exclusion either administratively or in any state or federal court.

6. **Effect of Final Payment.** The receipt by the United States of the last settlement payment that brings the aggregate settlement payment to TWO HUNDRED AND THIRTY-SEVEN THOUSAND AND NO/100 DOLLARS ($237,000.00) shall be referred to herein as the "Final Payment." Within sixty (60) days of receipt of the Final Payment, the United States shall file in the Action a complete satisfaction of the judgment.

7. **Effect of MALONE's Death.** In the event of the death of MALONE prior to the receipt by the United States the Final Payment, Defendants acknowledge that the United States shall be entitled to enforce the judgment, subject to any partial satisfaction, against the estate of MALONE and MALONE, INC.

8. **Reserved and Excluded Claims.** Notwithstanding any term of this Agreement, specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person (including MALONE and MALONE, INC.) are the following claims of the United States:

    A. Any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code);

    B. Any criminal liability;

    C. Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

    D. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct; and

E. Any liability based upon such obligations as are created by this Agreement.

9. **Financial Disclosure Statements and Self-Audit.**

A. Defendants have provided sworn financial disclosure statements (Financial Statements) to the United States. The United States has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement. Defendants warrant that the Financial Statements are complete, accurate, and current. If the United States learns of asset(s) in which Defendants had an interest at the time of this Agreement that were not disclosed in the Financial Statements, or if the United States learns of any misrepresentation by Defendants on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by ten percent (10%) or more, the United States may at its option: (a) rescind this Agreement and file suit based on the Covered Conduct or (b) let the Agreement stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net worth of Defendants previously undisclosed. Defendants agree not to contest any collection action undertaken by the United States pursuant to this provision, and immediately to pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses.

B. MALONE shall periodically audit Medicare billings submitted on his behalf and on behalf of any entity through which he bills Medicare. These audits shall be undertaken every six months until the amount due under this Agreement is paid in full. Each audit shall include analysis of ten Medicare beneficiaries, selected randomly. All services billed to Medicare for said beneficiaries during the prior six month period shall be assessed by utilizing the Charge Submission Audit Form, attached as Exhibit "A" hereto. If MALONE discovers

Settlement Agreement Between
United States, Jim F. Malone, D.P.M.
and Jim Malone, D.P.M., Inc.        9

during the course of any self audit that billing or documentation error(s) have occurred, such errors will be immediately rectified and any overpayment will be immediately reimbursed to Medicare. In addition, whenever an error is discovered, MALONE will forward a copy of the completed Charge Submission Audit Form to Medicare identifying, inter alia, the nature of the error and all corrective action taken in light of the findings which have been implemented in an effort to avoid recurrence of the error. MALONE shall retain all of the completed Charge Submission Audit Forms for a period of five years, and shall produce them to OIG-HHS upon request.

        **10.**    **Waiver Upon Rescission.** In the event that the United States, pursuant to Paragraph 9.A., above, opts to rescind this Agreement, Defendants agree not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 180 calendar days of written notification to Defendants that this Agreement has been rescinded, and (b) relate to the Covered Conduct, except to the extent these defenses were available on the Effective Date of the Agreement.

        **11.**    **Waiver in Criminal Prosecution or Administrative Action.** Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United

States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

12. **Defendants' Release.** Defendants fully and finally release the United States, its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.

13. **Current or Previously Denied Claims.** The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare carrier or intermediary or any state payer, related to the Covered Conduct; and Defendants agree not to resubmit to any Medicare carrier or intermediary or any state payer any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

14. **Unallowable Costs.** Defendants agree to the following:

    A. Unallowable Costs Defined: that all costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395hhh and 1396-1396v; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants, their present or former officers, directors, employees, shareholders, and agents in connection with the following shall be "Unallowable Costs" on government contracts and under the Medicare

///

///

Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits

Program (FEHBP):

    1.  the matters covered by this Agreement;

    2.  the United States' audit(s) and civil investigation(s) of the

matters covered by this Agreement;

    3.  Defendants' investigation, defense, and corrective actions

undertaken in response to the United States' audit(s) and civil investigation(s) in connection with

the matters covered by this Agreement (including attorney's fees);

    4.  the negotiation and performance of this Agreement; and

    5.  the payment Defendants make to the United States pursuant

to this Agreement. All costs described or set forth in this Paragraph 14.a. are hereafter

"Unallowable Costs."

    B.  <u>Future Treatment of Unallowable Costs:</u> These Unallowable Costs

shall be separately determined and accounted for by Defendants, and Defendants shall not charge

such Unallowable Costs directly or indirectly to any contracts with the United States or any State

Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost

statement, information statement, or payment request submitted by Defendants or any of

their subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

    C.  <u>Treatment of Unallowable Costs Previously Submitted for</u>

<u>Payment</u>: Defendants further agree that within 90 days of the Effective Date of this Agreement it

shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or

contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this

Paragraph) included in payments previously sought from the United States, or any State

Settlement Agreement Between
United States, Jim F. Malone, D.P.M.
and Jim Malone, D.P.M., Inc.  12

Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the unallowable costs. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Defendants or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Defendants or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

D.  Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

15. **Agreement for Benefit of the Parties.** This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 16, below.

16. **Waiver for Beneficiaries.** Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care

beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

17. **Solvency of Defendants**. Defendants warrant that they have reviewed their financial situation and that they are currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Defendants were or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

18. **Effect of Bankruptcy**. If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, Defendants commence, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Defendants' debts, or seeking to adjudicate Defendants as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Defendants or for all or any substantial part of Defendants' assets, Defendants agree as follows:

    A.    Defendants' obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Defendants shall not argue or otherwise take the position in any

such case, proceeding, or action that: (i) Defendants' obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Defendants were insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Defendants.

        B.     If Defendants' obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind this Agreement and bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by this Agreement. Defendants agree that (i) any such claims, actions, or proceedings brought by the United States (including any proceedings to exclude Defendants from participation in Medicare, Medicaid, or other Federal health care programs) are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and Defendants shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within 180 calendar days of written notification to Defendants that this Agreement has been rescinded pursuant to this Paragraph, except to the extent such defenses were available on the Effective Date of this Agreement; and (iii) if the United States elects to enforce this Agreement, rather than rescind the agreement, the parties stipulate that the United States has a valid claim against Defendants in the amount of $237,000, less any amount previously paid by the Defendants.

C. Defendants acknowledge that their agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

19. **Fees and Costs.** Except as expressly provided to the contrary in this Agreement, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

20. **Free and Voluntary Agreement.** Defendants represent that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

21. **Governing Law.** This Agreement is governed by the laws of the United States. The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement is the United States District Court for the Eastern District of California.

22. **Construction.** For purposes of construction, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

23. **Complete Agreement.** This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

22. **Authorization to Sign.** The individuals signing this Agreement on behalf of Defendants represent and warrant that they are authorized by Defendants to execute this Agreement. The United States signatories represent that they are signing this Agreement in their official capacities and that they are authorized to execute this Agreement.

23. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

24. <u>Binding Effect</u>. This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

25. <u>Consent to Disclosure</u>. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

26. <u>Effective Date</u>. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

<u>THE UNITED STATES OF AMERICA</u>

BENJAMIN B. WAGNER
United States Attorney

DATED: March 4, 2010      By: _____
GLEN F. DORGAN
Assistant United States Attorney
Eastern District of California

<u>JIM F. MALONE AND JIM MALONE, D.P.M., INC. - DEFENDANTS</u>

DATED: MARCH 4, 2010      By: _____
JIM F. MALONE, individually and as an
Authorized Officer of MALONE, INC.

DATED: March 4, 2010      By: _____
KEITH GREER
Attorney for Defendants